Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MATHEW ROGERS, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAY STREET LENDING, LLC,<br><br>Defendant. | No. 5:26-cv-03493-JGB-ACCV<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## <u>CLASS ACTION COMPLAINT</u>

1. Mathew Rogers ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Bay Street Lending, LLC ("Bay Street Lending" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

## PARTIES

5. Plaintiff, Mathew Rogers, is a natural person and a citizen of Palm Springs, California. He is domiciled in California.

6. Defendant, Bay Street Lending, is a limited liability company incorporated under the laws of the State of Delaware, with its registered agent (Harvard Business Services, Inc.) located at 16192 Coastal Hwy. Lewes, Delaware 19958.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has personal jurisdiction over Defendant because it directed telemarketing calls to California, which establishes sufficient minimum contacts for claims arising from those telemarketing calls.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

### *The Telephone Consumer Protection Act*

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses

from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13. As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14. The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(b)(3), (c)(5).

15. For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

16. Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17. The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18. The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id.*

20. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Mathew Rogers***

21. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

22. Plaintiff's residential cellular telephone number is 608-774-XXXX (the "telephone number").

23. A cellular phone can qualify as a "residential telephone" under § 227(c). *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).

24. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on January 22, 2007. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

25. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

26. Plaintiff has not used his telephone number for business purposes.

27. Plaintiff has not associated his telephone number with any business.

28. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past ten (10) years.

29. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

30. Plaintiff has never received a reimbursement from any business for his telephone number.

31. Plaintiff has never taken a business-related tax-deduction for his telephone number.

32. Plaintiff maintains a separate business telephone number of [number withheld]. That telephone number is not the subject of this litigation.

33. Plaintiff is not a current or former customer of Defendant.

34. Plaintiff has never had a business relationship with Defendant.

35. Plaintiff never provided his telephone number to Defendant.

36. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

***Defendant Engages in Telemarketing***

37. Defendant is a lending company that offers loan products and services to consumers. Specifically, Defendant operates as a small business financing broker, connecting businesses with capital through a network of over 50 lenders. Defendant offers financing products including working capital loans, business lines of credit, equipment financing, invoice factoring, purchase order financing, and SBA loans, with funding amounts ranging from $10,000 to $5,000,000. Defendant advertises that it has served over 2,500 businesses across all 50 states and has facilitated over $250 million in financing. Defendant markets itself as providing “Wall Street expertise for Main Street businesses,” soliciting small and mid-sized businesses that are seeking capital for purposes including expansion, cash flow management, payroll, inventory, and equipment purchases.[1]

38. Simply put, Defendant sells loan products and services.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

[1] Bay Street Lending Homepage, https://www.baystreetlending.com/.

39. A screenshot of Defendant's website is provided below.[2]




40. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Business Support Services" industry has one of the highest levels of telemarketing.[4]

41. To sell its loan products and services, Defendant engages in telemarketing campaigns.

***Defendant violated the TCPA***

42. As explained below, Defendant violated the TCPA numerous times.

43. On March 12, 2026, Defendant called Plaintiff's telephone number from (920) 847-4294 at 7:15 AM and left a prerecorded message.

---

[2] *Id.*

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[4] *Id.*

44. The prerecorded message stated: "Hi, this is Richard Billy giving you a call from Bay Street Lending. I was reaching out in regards to your financing application. We have you currently pre-approved. Give us a call back at 929-357-1957. Again, that's 929-357-1957."

45. On March 24, 2026, Defendant called Plaintiff's telephone number from (920) 847-4294 at 6:28 AM and left a prerecorded message.

> "Hi, this is Richard Billy giving you a call from Bay Street Lending. I was reaching out in regards to your financing application. We have you currently pre-approved. Give us a call back at 929-357-1957. Again, that's 929-357-1957."

46. On March 24, 2026, Defendant called Plaintiff's telephone number again from (920) 847-4294 at 11:07 AM and left a prerecorded message.

> "Hi, this is Richard Billy giving you a call from Bay Street Lending. I was reaching out in regards to your financing application. We have you currently pre-approved. Give us a call back at 929-357-1957. Again, that's 929-357-1957."

47. On March 25, 2026, Defendant called Plaintiff's telephone number from (920) 847-4294 at 1:17 PM and left a prerecorded message.

> "Hi, this is Richard Billy giving you a call from Bay Street Lending. I was reaching out in regards to your financing application. We have you currently pre-approved. Give us a call back at 929-357-1957. Again, that's 929-357-1957."

48. Defendant's advertised content related to pre-approving Plaintiff for a loan. In other words, Defendant called Plaintiff's telephone number and attempted to solicit Plaintiff to purchase loan products and services.

49. The prerecorded calls were identical in their wording and delivery. Each featured a crisp and articulate voice with the same tone, pitch, cadence, and pacing. The voice maintained a consistent delivery throughout each message,

noticeably lacking the natural variations, typical pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the prerecorded calls in question used a prerecorded or artificial voice.

50. Moreover, the identical wording and uniform vocal delivery across at least four separate messages, placed over a period of approximately two weeks, indicate that Defendant played the same prerecorded message each time, rather than having a live representative deliver the same solicitation.

51. Indeed, each message was exactly the same without any adjustment or response to the circumstances of the individual call. Most notably, Defendant left the exact same message twice on March 24, 2026—first at 6:28 AM and again at 11:07 AM, less than five hours later. If a live representative had personally placed both calls, one would reasonably expect the representative to acknowledge the earlier attempt, such as by stating that they had called earlier or were following up on their prior message. Instead, the second call repeated the exact same message, word for word, with the same voice, tone, pitch, cadence, and delivery, as though the earlier call had never occurred. This same-day repetition is consistent with Defendant's use of a prerecorded or artificial voice used for each message rather than a live representative.

52. During the prerecorded calls, the caller spoke without any response to Plaintiff's voice—confirming the automated nature of the message. Thus, on information and belief, the prerecorded calls in question used a prerecorded or artificial voice.

53. Defendant placed numerous telephonic solicitations to Plaintiff's telephone number—including, on information and belief, the following:

a. March 12, 2026, at 7:15 AM

b. March 24, 2026, at 6:28 AM

c. March 24, 2026, at 11:07 AM

d. March 25, 2026, at 1:17 PM

54. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

55. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

56. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose residential telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) did not provide prior consent to receive the calls and did not have an established business relationship with Defendant, based on Defendant's records.

> **Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, (5) when the telephone call used a prerecorded or artificial voice, and (6) who did not provide prior express

written consent to receive the calls, based on Defendant's records.

58. Together, the various classes are referred to as the "Class."

59. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

60. Plaintiff reserves the right to amend the class definition.

61. Plaintiff and Class Members constitute a well-defined community of interest—they are similarly situated persons and were similarly affected and damaged by the alleged conduct of Defendant.

62. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

63. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

64. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

65. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

66. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

67. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

68. whether Defendant violated the TCPA;

69. whether Defendant violated the TCPA willfully and knowingly;

70. whether Plaintiff is entitled to statutory damages;

71. whether Plaintiff is entitled to treble damages;

a. whether Defendant should be enjoined from further TCPA violations.

72. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues

in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

73. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

74. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

75. Defendant violated the TCPA willfully or knowingly.

76. Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

77. Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

**<u>SECOND CAUSE OF ACTION</u>**

**Telephone Consumer Protection Act**

**Violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Prerecorded Call Class)**

78. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

79. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

80. Defendant violated the TCPA willfully or knowingly.

81. Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

82. Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative and appointing his counsel to represent the Class;

B. Awarding statutory damages to Plaintiff and Class Members;

C. Providing the injunctive relief requested herein; and

D. Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED this 2nd day of November, 2026.

_/s/ Carly M. Roman_
Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I, Carly M. Roman, hereby certify that on November 2, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 2nd day of November, 2026.

Respectfully submitted,

*/s/ Carly M. Roman*

Carly M. Roman (SBN 349895)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com